**IT IS ORDERED as set forth below:**

**Date: April 11, 2023**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IN RE:

BEAULIEU GROUP, LLC et al.,

     Debtors.

CASE NO. 17-41677-BEM

CHAPTER 11

ENGINEERED FLOORS, LLC,

     Plaintiff,

v.

BEAULIEU OF AMERICA, INC., et al.,

     Defendants.

ADVERSARY PROCEEDING NO.
18-4031-BEM

## O R D E R

This matter is before the Court on Plaintiff Engineered Floors, LLC's ("EF")

_Motion for Contempt_ [Doc. 192] and _Motion for Partial Summary Judgment_ (the "Summary

Judgment Motion"). [Doc. 213]. Defendant Lakeshore Equipment Company ("Lakeshore") filed

a response to both Motions, and EF filed a reply relating to the Summary Judgment Motion. [Docs. 221, 222]. The Motions are now ripe for determination.

## I. Background

Debtor Beaulieu Group, LLC was a manufacturer and seller of carpet. During the bankruptcy case, EF purchased Beaulieu's carpet inventory under an Asset Purchase Agreement ("APA"), which was approved by this Court in an *Order (A) Approving Asset Purchase Agreement And Authorizing The Sale Of Assets Of The Debtors Outside The Ordinary Course Of Business, (B) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests, (C) Authorizing The Assumption And Sale And Assignment Of Certain Executory Contracts and Unexpired Leases And Establishing Cure Costs In Connection Therewith, And (D) Granting Related Relief* (the "Sale Order"). Lakeshore is a former customer of Beaulieu, who has alleged that carpets it purchased from Beaulieu and later from EF are defective. At issue here are carpets manufactured by Beaulieu and purchased from Beaulieu prior to the sale of assets ("Bucket 1" carpet) and carpets manufactured by Beaulieu and delivered by EF after the close of the sale of assets ("Bucket 2" carpet).

In a prior summary judgment order in this proceeding, the Court determined that EF is not liable for warranty and product liability claims relating to Bucket 1 carpet but that it was liable for warranties it issued for the Bucket 2 carpet (the "Prior SJ Order").[1] [Doc. 136 at 27-28, 33-35]. EF seeks to hold Lakeshore in civil contempt for allegedly violating the APA and Sale Order by claims Lakeshore has asserted against EF in this proceeding and in nonbankruptcy proceedings.

---

[1] The Prior SJ Order was appealed. The Court's ruling as to Bucket 1 carpet was not challenged on appeal, and its ruling as to Bucket 2 carpet was affirmed. [Doc. 170 at 5 n.2, 11-12; Doc. 209 at 10].

All claims and counterclaims in this proceeding have been resolved or dismissed except for EF's claim against Lakeshore for civil contempt, which is Count IX of the *First Amended and Restated Complaint for Injunction, Declaratory Judgment, Damages and Other Relief* [Doc. 79]. In the Motion for Summary Judgment, EF seeks partial summary judgment in the form of a determination that Lakeshore is bound by the APA and Sale Order and that Lakeshore violated the APA and Sale Order. In the Motion for Contempt, EF reasserts its civil contempt claim against Lakeshore and asks the Court to sever and convert the contempt claim into a separate contested matter.

## II. The Motion for Contempt

Before considering the Motion for Summary Judgment, the Court will consider EF's request to convert this proceeding into a contested matter as the contempt claim is the only remaining claim. "The court recognizes that pursuant to Federal Rule of Bankruptcy Procedure 9020 and 9014, the traditional way to bring an action for contempt is by motion. However, because an adversary proceeding provides a defendant with more, not less procedural protection than in a Rule 9014 contested matter brought by motion, 'courts routinely hear contempt actions brought as adversary proceedings.'" *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 820 (Bankr. N.D. Ga. 2018) (Ritchey Craig, J.) (quoting *Bennett v. Morton Bldgs., Inc. (In re Bennett)*, 2015 WL 8147588, at *2 (Bankr. N.D. Ohio Dec. 7, 2015) and citing *Henriquez v. Green Tree Serv., LLC (In re Henriquez)*, 536 B.R. 341, 343 n.2 (Bankr. N.D. Ga. 2015) (Sacca, J.)). There has been substantial progress in this matter, including a previous motion for summary judgment, appeals, and discovery, and there is nothing to be gained by converting the proceeding to a contested matter at this point. Therefore, the request for conversion will be denied and the Motion for Contempt will be denied as duplicative of Count IX.

**III. The Summary Judgment Motion**

  **A. Summary Judgment Standard**

   Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(a), (c); Fed. R. Bankr. P. 7056. The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party shows no genuine dispute of material fact. *Tippens v. Celotex Corp*., 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law …." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

   The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). For issues on which the moving party would bear the burden of proof at trial, it "must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all the essential elements of its case." *Landolfi. v. City of Melbourne, Fla*., 515 F. App'x 832, 834 (11th Cir. 2013). When "the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by either (1) negating an essential element of the non-movant's case or (2) by showing that there is no evidence to prove a fact necessary to the non-movant's case." *Wynn v. Paragon Systems, Inc*., 301 F. Supp.2d 1343, 1349-50 (S.D. Ga. 2004) (citing *Clark*, 929 F.2d at 606-08); *see also Celotex*, 477 U.S. at 323, 325, 106 S. Ct. at 2553, 2554 (stating that Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials negating the

opponent's claim" but that the moving party may satisfy its burden by "pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case.") (emphasis in original); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.*

When the material facts are not in dispute, the role of the Court is to determine whether the law supports a judgment in favor of the moving party. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. "[W]hen the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed." Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2725 (4th ed.).

**B. Procedural Posture**

EF filed a *Statement of Material Facts as to Which It Contends No Genuine Issue Exists to Be Tried in Support of Motion for Summary Judgment* (the "EF SMF") [Doc. 215]. Lakeshore filed a response to the EF SMF (the "Response") [Doc. 219] as well as a *Supplement to the Statement of Material Facts to Which It Contends No Genuine Issue Exists to Be Tried in Support of Motion for Summary Judgment* (the "Supplement"). [Doc. 220]. In the Response, Lakeshore denies several numbered facts as stated on the grounds that the portion of the record cited by EF does not support the factual allegation [Doc. 219 ¶ 8, 10, 21, 23, 24, 43, 44, 46] and denies other facts as stated with further elaboration. [Doc. 219 ¶ 25, 30, 37, 42, 48]. EF objects to

Lakeshore's Supplement on the grounds that it is not provided for by BLR 7056-1, but nevertheless responded to each asserted fact. [Doc. 223].

BLR 7056-1(a)(1) requires the movant to file a statement of material facts to which it contends no genuine issue exists to be tried. The Local Rule requires the respondent to include with its response

> a separate and concise statement of material facts, numbered separately, as to which the respondent contends a genuine issue exists to be tried. Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted.

BLR 7056-1(a)(2). Nothing in this language precludes a respondent from asserting additional facts that it contends are material and cannot be disputed. Additionally, Fed. R. Civ. P. 56(c) and (d) contemplate that the nonmovant may assert facts in opposition to the motion, and provide a remedy if the nonmovant is unable to do so for specified reasons. Therefore, the Court will consider Lakeshore's Supplement and EF's responses thereto.

On March 7, 2023 Lakeshore filed its *Notice of Defendant Lakeshore Equipment Company d/b/a Lakeshore Learning Materials' Request for Judicial Notice* [Doc. 224] in which it asks this Court to take judicial notice of an order entered by the District Court for the Central District of California on March 3, 2023 on EF's summary judgment motion in a case captioned Engineered Floors, LLC v. Lakeshore Equipment Company, Case No. 2:21-cv-02078-SPG-DFM (the "California Order"). EF filed its *Response to the Judicial Notice Request* on March 9, 2023 [Doc. 225]. EF does not oppose the Court taking judicial notice of the California Order if the Court does so subject to certain context and constraints.

The Court notes that "a court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of

the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The Court will take judicial notice of the California Order for that limited purpose, and does not take any factual determinations by the Court as true. The Court notes further that the determinations contained in the California Order do not affect the Court's analysis of the present motion.

### C. Undisputed Material Facts

On July 16, 2017 (the "Petition Date"), Beaulieu Group, LLC ("Beaulieu" or "Debtor"), Beaulieu Trucking, LLC, and Beaulieu of America, Inc. each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned jointly administered bankruptcy case. [Docs. 215, 219 ¶ 1; Doc. 220 ¶ 2, 3; Doc. 223 at 7]. Beaulieu was in the business of manufacturing and selling carpet and other flooring materials. [Doc. 220 ¶ 1; Doc. 223 at 7]. Lakeshore was a customer who maintained an open account with Beaulieu both before and after Beaulieu filed for bankruptcy. [Docs. 215, 219 ¶ 2]. Lakeshore was not listed as a creditor or party in interest in the bankruptcy schedules. [Doc. 220 ¶ 4; Doc. 223 at 7]. Beaulieu did not serve Lakeshore with a copy of the bankruptcy pleadings, the liquidation plan, orders, notices of hearings, or deadline notices. [Doc. 220 ¶ 5; Doc. 223 at 7]. After the Petition Date, Beaulieu continued to manufacture and sell its products in the ordinary course of business. [Doc. 220 ¶ 6; Doc. 223 at 7].

As of the Petition Date, Beaulieu had failed to produce and deliver carpet to Lakeshore as required under two written purchase orders, numbers 196367 (dated May 10, 2017 and having a completion date of June 9, 2017) and 222870 (dated June 12, 2017 and having a completion date of "AT ONCE"). [Docs. 215, 219 ¶ 3]. Lakeshore's Director of Vendor Relations,

Jeff Champlin, recalled that "Lakeshore had been experiencing delays in production and shipment prior to the bankruptcy filing." [Id. ¶ 4, quoting Champlin Dep. p. 18 li. 2-9[2]].

Lakeshore learned of Beaulieu's bankruptcy on Monday July 17, 2017, by a press release from a news feed service Mr. Champlin received via email. [Id. ¶ 5]. Mr. Champlin also received separate notice from Beaulieu through a phone call and a letter (dated July 17, 2017) notifying Lakeshore of the bankruptcy case. [Id. ¶ 6]. Notice of the bankruptcy was also published in Floor Covering Weekly, a national trade publication. [Id. ¶ 7]. Two days after learning of the bankruptcy, Lakeshore issued a new purchase order to Beaulieu dated July 19, 2017. [Id. ¶ 9].

Beaulieu made public EF's intention to purchase Beaulieu's assets in its motion to approve the sale filed October 6, 2017 (the "Sale Motion"; Case No. 17-41677 Doc. 297). [Id. ¶ 11]. On or about November 1, 2017, the Court entered the Sale Order. [Id. ¶ 12; Doc. 220 ¶ 7; Doc. 223 at 7]. Under the Sale Order and the APA approved by it, EF did not assume Debtor's liabilities and obligations to Lakeshore. [Docs. 215, 219 ¶ 13]. Under the Sale Order and APA, EF did not assume any executory contracts between Debtor and Lakeshore. [Id. ¶ 14].

The sale closed effective as of 12:01 a.m. on November 6, 2017 (the "Closing Date"). [Id. ¶ 15]. Under the APA and Sale Order, any obligations of Beaulieu to Lakeshore arising out of operation of Beaulieu's business, if any, were extinguished as against EF. [Id. ¶ 16]. This Court retained exclusive jurisdiction in the Sale Order over determination and enforcement of disputes concerning the APA and Sale Order. [Id. ¶ 17].

Jeff Champlin admits that he knew of Engineered Floors' purchase of Beaulieu's assets by "early November." [Id. ¶ 18]. Lakeshore received a letter via email from Engineered Floors on November 10, 2017, informing it of the purchase. [Id. ¶ 19].

---

[2] [Doc. 216-1 at 6].

In emails between Lakeshore and Beaulieu in early November, just a few days before the asset purchase closed, Lakeshore confirmed it had adequate stocks of Beaulieu carpet on hand in most styles and colors except for navy. [Id. ¶ 20].

Lakeshore began taking delivery of carpet from Shaw Industries to replace the Beaulieu carpet in late 2017 to early 2018, and began offering it to customers in February 2018. [Id. ¶ 22].

Attorney John K. Flock was retained by Lakeshore to assert certain claims and causes of action against EF, arising from and relating to the non-conforming and defective carpeting and flooring products Lakeshore purchased and received from EF. [Doc. 220 ¶ 16; Doc. 223 at 8]. On May 18, 2018, Mr. Flock sent a letter to EF titled "Confidential Settlement Demand." [Docs. 215, 219 ¶ 25 & Doc. 36 at 6-10]. The letter asserted damages totaling $1,417,262.40, resulting from non-conforming and defective carpeting and flooring products. [Doc. 220 ¶ 20; Doc. 223 at 8]. The letter stated, among other things: "As you know, Beaulieu was later acquired by EF, and EF merged with, and continued the business of, Beaulieu. … Following the merger of the companies, EF then assumed Beaulieu's responsibilities. … As a consequence of having merged the companies and continuing Beaulieu's business, EF remains liable for Beaulieu's liabilities." [Doc. 36 at 6, 8, 9]. The letter cited a Pricing Agreement executed by Beulieu on February 10, 2017 and a Pricing Agreement with the same terms executed by Beaulieu Territory Manager Steve Cvitanovich on August 28, 2017, as well as purchase orders issued by Lakeshore on May 9, 2017, July 5, 2017, and June 12, 2017. [Id. at 6-7]. The letter stated "EF has provided non-conforming and defective products to Lakeshore. In so doing, EF, as Beaulieu's successor, has committed breach of contract by violating both the Pricing Agreement and Purchase Orders." [Id. at 8]. The letter also argued that EF by its conduct had tacitly accepted the terms of the Pricing Agreement and Purchase Orders resulting in an implied-in-fact contract. [Id. at 9]. Counsel for EF

responded with a letter to Mr. Flock on June 5, 2018, informing Lakeshore that the successor liability claims it was asserting were barred by the APA and Sale Order. [Docs. 215, 219 ¶ 26]. EF's response letter disputed liability for the damages relating to non-conforming and defective carpeting and flooring products Lakeshore received from EF. [Doc. 220 ¶ 21; Doc. 223 at 8]. EF's response letter stated that copies of the APA and Sale Order were enclosed and quoted excerpts from the Sale Order that EF contended precluded Lakeshore's claims. [Doc. 79-6].

Lakeshore first sued EF in California in 2018, for successor-liability claims. [Docs. 215, 219 ¶ 27]. On or about August 3, 2018, Mr. Flock filed a Complaint for Breach of Implied-in-Fact Contract, Breach of Contract, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness, Breach of Express Warranty, Fraud, Negligent Misrepresentation, Breach of Implied Warranty of Good Faith and Fair Dealing, and Declaratory Relief (the "2018 Complaint") in the Superior Court of the State of California, County of Los Angeles – South Central District, thereby initiating Case No. TC029234 (the "2018 Action"). [Doc. 220 ¶ 17; Doc. 224 at 8]. The defendants in the 2018 Action included EF but did not include either of the Debtors. [Doc. 220 ¶ 18; Doc. 224 at 8]. EF removed that case and moved to dismiss. [Docs 215, 219 ¶ 27]. EF sued Lakeshore and Beaulieu in this Court, seeking to enforce the APA and Sale Order and to recover attorneys' fees as damages for Lakeshore's violations. [Id. ¶ 28]. After EF filed this adversary proceeding, Lakeshore eventually dismissed the 2018 Action without prejudice. [Id. ¶ 29]. Lakeshore asserted successor liability counterclaims in this proceeding. [Id. ¶ 30].

Before this adversary proceeding, Mr. Flock never represented Lakeshore in any bankruptcy-related matter anywhere in the country. [Doc. 220 ¶ 19; Doc. 223 at 8]. Mr. Flock was never contacted by any of the Debtors or their bankruptcy counsel prior to the filing of this proceeding and was never served by Debtors' counsel with any pleadings of any kind relating to the bankruptcy cases before the filing of this proceeding. [Doc. 220 ¶ 22, 23; Doc. 223 at 8].

10

Lakeshore is a California corporation doing business in the state of Georgia, among other places. [Doc. 220 ¶ 24; Doc. 223 at 8]. Lakeshore's designated registered agent for service in Georgia is Lakeshore Learning Center. [Id.]. Lakeshore was never served with any bankruptcy documents through its registered agent other than the pleadings filed in this proceeding. [Id.].

Lakeshore initially argued that because it did not receive formal notice of Beaulieu's bankruptcy and sale of assets, it was not bound by the APA and Sale Order. [Docs. 215, 219 ¶ 31]. Lakeshore admitted that the APA and Sale Order protected EF: "It is clear from the above provisions [of the Sale Order] that EF cannot be held responsible for the Debtor Entities' pre-closing liabilities." [Id. ¶ 32 (quoting Doc. 33 at 11)]. Lakeshore eventually withdrew and abandoned its claims of insufficient notice, by amending its counterclaims and saying it was waiving its claims of insufficient notice. [Id. ¶ 33]. On appeal, when the Liquidating Trustee informed the district court and court of appeals that Lakeshore had waived its claims of insufficient notice, Lakeshore agreed by joining and ratifying without reservation the Liquidating Trustee's briefs in which is asserted Lakeshore's waiver of notice. [Id. ¶ 34]. Most recently, Lakeshore continued to deny that it is bound or constrained by the APA and Sale Order, but not because of lack of notice; Lakeshore instead asserts that it is not bound because it was not a creditor of Beaulieu. [Id. ¶ 35].

Lakeshore and Beaulieu agreed to a settlement of Lakeshore's late-filed $1.4 million administrative expense claim for $102,500, while allowing Lakeshore to continue with all claims against EF, except claims for allegedly defective Bucket 1 carpet. [Id. ¶ 36].

This Court held on summary judgment that it had jurisdiction to interpret and enforce the APA and Sale Order. [Id. ¶ 38]. This Court held that EF's sales of carpet to Lakeshore were not based on Beaulieu's contracts with Lakeshore, "but rather from a separate post-Closing Date contract...." [Id. ¶ 39 (quoting Doc. 136 at 25)]. This Court also held that under the APA and

Sale Order Beaulieu's bankruptcy estate, not EF, was liable for Lakeshore's claims on Bucket 1 carpet. [Id. ¶ 40].

Lakeshore designated its Director of Vendor Relations, Jeffrey Champlin as its representative under Fed. R. Civ. P. 30(b)(6) to testify as to Lakeshore's calculations of its damages, including the specific damages on which those calculations are based. [Id. ¶ 41]. Lakeshore included in its damages claimed against EF in its initial demand and in the 2018 Action and in counterclaims in this proceeding claims based on Bucket 1 carpet. [Id. ¶ 45]. When asked whether as much as half of the carpet on which Lakeshore has continued to base its damages calculations was Bucket 1 carpet, Mr. Champlin said "I don't know." [Id. ¶ 47].

### D. Applicable Law

Count IX of the amended complaint asks the Court to hold Lakeshore and its counsel in willful civil contempt for knowingly and intentionally violating the Sale Order. Bankruptcy Courts have authority to enforce their own orders through their inherent contempt powers and through 11 U.S.C. § 105(a).[3] *In re Ocean Warrior, Inc*., 835 F.3d 1310, 1316 (11th Cir. 2016).

To establish civil contempt based on violation of a court order, the plaintiff must demonstrate by clear and convincing evidence that an order was violated and that "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Jordon v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988) (citing *United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986)); *S.E.C. v. Pension Fund of Am., L.C.*, 396 F. App'x 577, 180 (11th Cir. 2010). Additionally, the plaintiff must demonstrate that the defendant had knowledge of the order it allegedly violated. *Fidelity*

---

[3] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

*Mortg. Inv. v. Camelia Builders, Inc*., 550 F.2d 47, 52 (2nd Cir. 1976) ("a person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice."); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 715 (1974)  ("[P]rinciples of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt[.]"). Once the plaintiff establishes its prima facie case, the burden shifts to the defendant "to produce evidence explaining [its] noncompliance …." *Peery v. City of Miami*, 977 F.3d 1061, 1076–77 (11th Cir. 2020).

If the defendant is found in contempt, the Court may award sanctions to "compensate the complainant for losses and expenses incurred because of the contemptuous act" or to "coerce the contemnor into complying with the court order." *Jove Eng'g, Inc. v. I.R.S*., 92 F.3d 1539, 1557 (11th Cir. 1996); *see United States v. Mine Workers of Am.*, 67 S. Ct. 677, 701 (1947) (remedies for civil contempt may be coercive, compensatory, or both).

### E. Analysis

The Summary Judgment Motion seeks a determination (1) that Lakeshore is bound by the APA and Sale Order and (2) that it violated the APA and Sale Order. Lakeshore argues that the only issue properly before the Court is whether Lakeshore is bound by the APA and Sale Order and that an evidentiary hearing is required to determine whether Lakeshore violated an order and should be held in contempt. The Court can consider on summary judgment whether the undisputed facts establish that Lakeshore violated an order, and that issue is properly before the Court. But, a ruling in EF's favor would not by itself be sufficient to find Lakeshore in contempt, as it merely

goes to the threshold basis for contempt (violation of an order) without establishing the validity of

the order[4], its clarity, or Lakeshore's ability to comply, all of which will require further evidence.

Lakeshore also argues that the Summary Judgment Motion is premature because

the parties have stipulated that Lakeshore may conduct its deposition of EF after the close of the

discovery period and that summary judgment should not be granted until the non-moving party

has had an adequate opportunity to conduct discovery. Under Rule 56(d) "[i]f a nonmovant shows

by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain

affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A motion

under Rule 56(d) may be granted when the nonmovant "specifically demonstrate[s] how

postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the

movant's showing of the absence of a genuine issue of fact." *Wallace v. Brownell Pontiac-GMC

Co., Inc*., 703 F.2d 525, 527 (11th Cir. 1983) (internal quotation marks and citations omitted).

"[V]ague assertions that additional discovery will produce needed, but unspecified facts" is not

sufficient. *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989) (citing

*Wallace*, 703 F.2d at 527). Lakeshore has neither filed a Rule 56(d) motion supported by an

affidavit nor identified "with particularity the facts [it] expects to discover and how those facts

would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc.

v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Therefore, there is no basis to delay ruling on the

Summary Judgment Motion.

The first issue for summary judgment is whether Lakeshore is bound by the APA

and Sale Order. EF argues that Lakeshore is bound because it has admitted being bound and is

---

[4] The motion presently before the Court does not seek a determination of the validity of the order. The Court
acknowledges that this has arguably been decided previously in this proceeding.

now estopped from denying same and because this Court has implicitly found Lakeshore is bound

in its Prior SJ Order. Lakeshore denies admitting it is bound by the APA and Sale Order or waiving

any arguments regarding whether it is bound. Lakeshore argues that the Court should interpret its

own order to determine if Lakeshore is bound. Lakeshore contends it was not a creditor on the

Petition Date, so the question is whether the Court intended to bind non-creditor customers of

Beaulieu. EF argues that Lakeshore was a creditor of Beaulieu on the Petition Date by virtue of

two prepetition purchase orders that remained unfilled on the Petition Date.

        With respect to Lakeshore's argument that it was not a creditor of Beaulieu, EF has

provided with its Reply a copy of *Lakeshore Equipment Company d/b/a/ Lakeshore Learning*

*Materials' Objections and Responses to Plaintiff Engineered Floors, LLC's Third Requests for*

*Admission* ("RFA"). [Doc. 222-1]. The first RFA and response are as follows:

> As of July 16, 2017, Lakeshore held a claim or claims against Beaulieu for
> Beaulieu's failure to produce and deliver carpet to Lakeshore as and when required
> under agreements between Lakeshore and Beaulieu.
>
> RESPONSE: Lakeshore objects to Request No. 1 on the grounds that the same is
> vague, overly broad, and seeks a legal conclusion. Subject to the foregoing
> objections, and without waiving same, the allegation set forth in Request No. 1 is
> admitted.

[Id. at 4]. Given the objection, the Court cannot merely accept this admission as an undisputed

fact. Because "claim" is a defined term under the Bankruptcy Code, 11 U.S.C. § 101(5), the Court

agrees that the request seeks a legal conclusion and would sustain the objection on that basis.

        Even without the admission, the undisputed facts show that Lakeshore was a

creditor of Beaulieu. A creditor is defined by the Bankruptcy Code as an "entity that has a claim

against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"

11 U.S.C. § 101(10)(A). In a voluntary bankruptcy case, the date of the order for relief is the date

of the filing of the petition. *Id.* § 301. Lakeshore issued two purchase orders to Beaulieu that were

15

due to be filled prepetition but had not been filled as of the Petition Date. [Docs. 215, 219 ¶ 3]. Thus, Lakeshore had a claim consisting of either a right to payment or a right to an equitable remedy, 11 U.S.C. § 101(5), which made it a creditor. As a result, the APA and Sale Order are binding on Lakeshore by the terms of the Sale Order, which provides: "This Order and the Agreement [APA] shall be binding upon and govern the acts of all Persons including, without limitation … all creditors of the Debtors (whether known or unknown) …." [Case No. 17-41677, Doc. 345 at 31 ¶ 47]. But even if Lakeshore were not a creditor of Beaulieu but a mere customer, this provision of the Sale Order is broad enough to bind Lakeshore to the APA and Sale Order as it applies to "all Persons[.]" While an argument may be made that strangers to Beaulieu should be excluded from "all Persons," Lakeshore is not a stranger to Beaulieu. It was a customer who did business with Beaulieu both prepetition and postpetition and was a customer of EF after the sale of assets.

Additionally, there is no dispute that Lakeshore had actual, if informal, notice of the bankruptcy case not later than July 17, 2017 and of the sale of assets by early November 10, 2017, and had been provided copies of the APA and Sale Order not later than June 5, 2018. [Docs. 215, 219 ¶ 5-6, 28-19; Doc. 79-6]. Therefore, the Court concludes that pursuant to the provisions of the Sale Order, Lakeshore is bound by both the APA and the Sale Order, and it need not consider EF's arguments about estoppel and waiver. EF is entitled to summary judgment on this issue.

The second issue for summary judgment is whether Lakeshore violated the APA and Sale Order. EF argues that Lakeshore violated the Sale Order by (1) suing EF in California in the 2018 Action for successor liability and other claims barred by the APA and Sale Order; (2) suing EF by counterclaims in this proceeding for successor liability and other claims that are identical to the claims first brought in California; (3) moving for partial summary judgment in this proceeding and asking this Court to declare EF liable for Beaulieu's liabilities as its successor

under doctrines of "mere continuation" and de factor merger; and (4) suing EF for a second time in California for carpet sold by Beaulieu prior to November 6, 2017 and based on Beaulieu's warranties. More specifically, EF contends that by the foregoing conduct Lakeshore violated paragraphs 17, 32, 33, 34, 36, 38, and 51 of the Sale Order and sections 2.2 and 2.4 of the APA.

Lakeshore argues that the APA is not part of an order of this Court as it was never clearly and unambiguously incorporated in its entirety into the Sale Order and that Lakeshore cannot be held in contempt of the APA to the extent it stands alone. Lakeshore acknowledges that the provision of the Sale Order cited by EF references that assets purchased by EF in the APA were purchased free and clear of any liens or burdens and that as of November 1, 2017, EF acquired none of the liabilities possessed by Debtor for Debtor's business operations or the assets purchased in the Sale Order. However, Lakeshore contends that EF has failed to show that Lakeshore violated these provisions by clear and convincing evidence.

With respect to Lakeshore's argument that the APA is not part of an order of this Court, the Court disagrees. As noted above, paragraph 47 of the Sale Order provides that "[t]his Order and the Agreement [APA] shall be binding upon and govern the acts of all Persons …." "Person" is defined by the APA to include corporations, and that definition is incorporated into the Sale Order. [Case No. 17-41677, Doc. 297 at 65; Doc. 345 at 2 n.2]. Thus, Lakeshore is bound to the APA by the terms of the Sale Order such that any violation of the APA would run afoul of ¶ 47 of the Sale Order.

The Sale Order standing alone contains various provisions prohibiting successor liability claims against EF:

17. Except as expressly provided in the Agreement, the Purchaser [EF] is not assuming nor shall … be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Property or operation of the Business prior to the consummation of the

transactions contemplated by the Agreement, … all of which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser. …

32. The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement …. *Consequently, all Persons … are hereby enjoined from taking any action against the Purchaser or the Purchased Property to recover any Liens[5] or on account of any liabilities of the Debtors other than Assumed Liabilities* pursuant to the Agreement. …

33. The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability except for the assumption of the Assumed Liabilities as expressly provided in the Agreement. ….

34. Further, except as provided in the Agreement, transfer of title and possession of the Purchased Property shall be free and clear of any Claims pursuant to any successor or successor-in-interest liability theory, including the following: … any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.
…

36. Except to the extent expressly included in the Assumed Liabilities, and except for any breach under the Agreement, pursuant to Bankruptcy Code §§ 105 and 363, all Persons … asserting or holding a Lien of any kind or nature whatsoever against, in, or with respect to the Debtors or the Purchased Property (other than the Permitted Liens), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Property, the operation of the Debtors' Business prior to the Closing Date, or the transfer of the Purchased Property to the Purchaser, shall be forever barred, *estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien* ….
…

51. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Property and any Assigned Contracts, and all issues and disputes arising in

---

[5] The Sale Order defines "Liens" to include a wide variety of encumbrances and rights, including "Claims, … Claims for … products liability, … any Claim based on any theory that the Purchaser is a successor or a continuation of the Debtors or the Debtor's business[,] … [and] Claims otherwise arising under doctrines of successor liability[.]" [Doc. 345 at 8-9 ¶ R]. The Court notes that although the Sale Order provides that capitalized terms not defined in the Sale Order will have the meaning given to them by the APA or the Sale Motion, the term "Claim" is not defined any of those documents. [Id. at 2 n.2].

connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Property free and clear of all Liens (except Permitted Liens and Assumed Liabilities).

[Case No. 17-41677, Doc. 345 (footnote omitted) (emphasis added)].

Turning to the specific alleged violations: First, EF contends Lakeshore's 2018 Complaint against EF violated the APA and Sale Order because its damages calculation included Bucket 1 carpet and because it included successor liability claims that amounted to a dispute concerning the APA and Sale Order which is within the exclusive jurisdiction of the Bankruptcy Court. It is undisputed that Lakeshore sued EF in California in August 2018 for successor-liability claims. [Doc. 219 ¶ 27]. A copy of the 2018 Complaint was filed with the initial complaint in this proceeding. [Doc. 1-3]. The EF SMF cites to ¶¶ 14, 26-33 and 46-54 of the 2018 Complaint as asserting successor liability claims.

The 2018 Complaint alleges that Lakeshore issued purchase orders to Beaulieu on May 9, 2017, July 5, 2017, and June 12, 2017, and that the purchase orders provided:

If any of the goods supplied under this purchase order do not comply with Seller's representations or sample, or fail to comply with governmental standards or regulations or fails to be merchantable or fit for their intended use, or if Seller fails to exactly comply with the purchase order, Seller shall be liable to Lakeshore for all resulting damages, losses, expenses, and injury. Under any of those circumstances, Lakeshores shall also have the right to reject the goods and return them at the Seller's expense.

[Doc. 1-3 ¶ 14]. The 2018 Complaint further alleges that Beaulieu failed to keep carpet in stock, had quality control and defective manufacturing issues, and was unable to satisfy outstanding orders. [Id. ¶ 26-28]. The problems continued into November 2017 after EF "acquired the business and assets of Beaulieu[.]" [Id. ¶ 29]. EF delivered carpet to Lakeshore because "EF had assumed responsibility for Lakeshore's Purchase Orders[.]" [Id. ¶ 30]. Lakeshore subsequently notified EF that it had learned that carpet backing was failing, and a representative of EF inspected the carpet and confirmed it was defectively manufactured. [Id. ¶ 31-32]. Lakeshore replaced defective carpet

for its customers. [Id. ¶ 33]. The second count of the 2018 Complaint is a claim for breach of contract that alleges Beaulieu executed a pricing agreement by which it agreed that certain products would be continuously available during 2018 and 2019, that Lakeshore issued the above-mentioned purchase orders, that Lakeshore performed its obligations under the contracts, that EF sold non-conforming and defective flooring materials in violation of the contracts, and that Lakeshore was damaged. [Id. ¶ 46-54]. The 2018 Complaint also lists the damages Lakeshore alleged it incurred as a result of the non-conforming and defective products. [Id. ¶ 45]. EF did not identify any other portions of the 2018 Complaint as violating the APA and Sale Order.

Lakeshore has admitted that the 2018 Complaint included claims for successor liability, that the damages claimed against EF included claims based on Bucket 1 carpet, and that this Court has held EF is not liable to Lakeshore for Bucket 1 carpet. [Doc. 219 ¶ 27, 40, 45]. These admissions as well as allegations in the 2018 Complaint that seek to hold EF liable for Bucket 2 carpet on the basis of successor liability are sufficient to establish that by filing the 2018 Complaint Lakeshore violated paragraphs 32 and 36 of Sale Order, which enjoin the assertion of such claims.

Second, EF contends Lakeshore's counterclaims against EF in this proceeding for successor liability and other claims that are identical to the claims first brought in California violated the APA and Sale Order. Lakeshore filed its answer and counterclaims in this proceeding on October 26, 2018 (the "Counterclaims"). [Doc. 15].[6] The 2018 Complaint and the Counterclaims are substantially similar, asserting the same allegations and claims except that the Counterclaims also included a count to transfer the claims to California, and the 2018 Complaint included a count for fraud, which was not part of the Counterclaims. Additionally, in the

---

[6] EF filed an amended complaint in this proceeding on June 12, 2020. [Doc. 79]. Lakeshore filed an answer to the amended complaint on July 2, 2020, which did not affect its Counterclaims. [Doc. 84].

calculation of damages, the Counterclaims include a footnote absent from the 2018 Complaint, which states:

> Lakeshore is currently analyzing the order/production timeline and delivery dates of the products in order to make a final determination of what product was (1) manufactured and sold by Debtor, (2) manufactured by Debtor but sold by Engineered Floors, and (3) manufactured and sold by Engineered Floors. This analysis will liquidate the final amount Lakeshore asserts as its administrative claim and the claim amount will be adjusted accordingly.

[Id. ¶ 39 n.2].

Lakeshore admitted that it asserted successor liability counterclaims in this AP and that its calculation of damages includes Bucket 1 carpet. [Doc. 219 ¶ 30, 45]. The difference between the Counterclaims and the 2018 Complaint is that the Counterclaims were asserted in the Court that issued the Sale Order. The Court cannot say that it violates the APA and Sale Order to bring claims in the Bankruptcy Court, the validity of which are dependent on this Court's interpretation of the APA and Sale Order, especially when, as EF points out, this Court retained exclusive jurisdiction over the APA and Sale Order. To rule otherwise would leave Lakeshore with no forum to determine whether its claims are barred by the APA and Sale Order.

Third, EF contends that by moving for partial summary judgment and asking this Court to declare EF liable for Beaulieu's liabilities as its successor under doctrines of "mere continuation" and de facto merger Lakeshore violated the APA and Sale Order.

Lakeshore filed a motion for partial summary judgment on February 25, 2019 [Doc. 32], a first amended motion for partial summary judgment on April 3, 2019 [Doc. 47], and a second amended motion for partial summary judgment on June 30, 2020 (collectively, the "Lakeshore Motion"). [Doc. 83]. In the Lakeshore Motion, Lakeshore sought a determination that the Sale Order did not grant EF "immunity from liability for defective products that were either (i) manufactured by [Beaulieu] and shipped by EF; or (ii) manufactured and shipped by EF[.]" [Doc.

32 at 1]. Lakeshore stated that pursuant to a settlement approved by the Court (a settlement between Lakeshore and the Liquidating Trustee, to which EF was not a party), the claims relating to Bucket 1 carpet had been satisfied, and "[t]o be clear, the Bucket 1 Claims are released not only as to the BLT Defendants but also as to EF. Therefore, EF has no potential liability to Lakeshore or the BLT Defendants on the Bucket 1 Claims, including no type of subrogation, contribution, or administrative claim." [Doc. 83 at 6].

For the same reasons that the Counterclaims do not violate the APA and Sale Order, the motion for partial summary judgment does not violate the APA and Sale Order. Whether these are valid claims depends on this Court's interpretation of its own orders.

Finally, EF contends that Lakeshore violated the APA and Sale Order by suing EF for a second time in California for carpet sold by Beaulieu prior to November 6, 2017 and based on Beaulieu's warranties (the "2020 Lawsuit"). EF has not cited to any portion of this Court's record that includes a copy of this second lawsuit. The record indicates that EF sued Lakeshore in the Superior Court of Whitfield County, Georgia, on June 12, 2020, that the proceeding was removed by Lakeshore to the District Court for the Northern District of Georgia, that the proceeding has been transferred to the District Court for the Central District of California, and that Lakeshore has asserted counterclaims in the proceeding. [Doc. 214 at 10; Doc. 185 at 12-13; Doc. 120 at 13 n.8 & 28]. While the complaint for that proceeding is in the record [Doc. 120 at 28], any counterclaims asserted by EF are not. EF has cited to the case number and a docket entry for the 2020 Lawsuit, without also filing copies of that document in this proceeding or asking the Court to take judicial notice of the counterclaims.[7] While it may be possible to take judicial notice of

---

[7] By contrast, as previously noted, Lakeshore formally asked the Court to take judicial notice of the California Order entered in the 2020 Lawsuit and has provided the Court with a copy of that order. [Doc. 224]. EF contends that the order confirms that Lakeshore continues to improperly seek damages that include claims on Bucket 1 carpet. Even if the Court could take the breakdown of damages contained in the California Order as an accurate reflection of the damages claimed by Lakeshore in the 2020 Lawsuit, they differ in some respects from the amounts claimed in the

publicly available records of other courts even if they are not in this Court's record,[8] it is the movant's obligation on summary judgment to cite to materials "in the record". Fed. R. Civ. P. 56(c)(1)(A). The Court will not go outside the record to determine whether Lakeshore's counterclaims in the 2020 Lawsuit violate the APA and Sale Order.

The only other support for this violation offered by EF is the Champlin deposition. In its Reply, EF states that "[w]hen presented on cross-examination with a copy of paragraph 53 from Lakeshore's counterclaim in the California litigation (tabulating the damages Lakeshore claims against Engineered Floors), its designated representative, Mr. Champlin, admitted 'both the $623,468.21 figure and the freight cost … [$488,160.60] … *include … carpet sold by Beaulieu prior to November 6, 2017 ….*'" [Doc. 222 at 9-10 (emphasis and alteration in original)]. Without a copy of the counterclaims, this testimony is not sufficient for the Court to determine whether counterclaims by Lakeshore in the 2020 Lawsuit violate the APA and Sale Order. Therefore, EF is not entitled to summary judgment for this alleged violation.

**IV. Conclusion**

Based on the foregoing, the Court finds that Lakeshore is bound by the APA and Sale Order. The Court further finds that Lakeshore violated the APA and Sale Order by filing the 2018 Complaint in California in which it asserted successor liability claims for Bucket 2 carpet and included Bucket 1 carpet in the calculation of damages. The Court further finds that Lakeshore did not violate the APA and Sale Order by filing the Counterclaim or the Lakeshore Motion in this

---

2018 Lawsuit creating a question of fact about whether the amounts include amounts for Bucket 1 carpet. EF argues further that by asserting counterclaims for fraud, negligent misrepresentation, and breach of contract that Lakeshore was claiming EF assumed Beaulieu's warranties. The Court cannot evaluate this argument without seeing the actual allegations made in the counterclaims.

[8] *See Paez v. Secretary, Fla. Dept. of Corrections*, 947 F.3d 649, 651-52 & n.3 (11th Cir. 2020) (magistrate court did not err in taking judicial notice of the dates certain motions were filed and orders were entered from an electronic state court docket that was never made part of the magistrate court's record).

Court. The Court further finds that factual issues preclude a determination on summary judgment as to whether Lakeshore violated the APA and Sale Order in the 2020 Lawsuit. Accordingly, it is

ORDERED that the Motion for Contempt is DENIED as duplicative of Count IX of the amended complaint; it is further

ORDERED that the Motion for Summary Judgment is GRANTED in part; it is further

ORDERED that Lakeshore is bound by the APA and Sale Order; it is further

ORDERED that Lakeshore violated the APA and Sale Order by filing the 2018 Complaint.

The Court will set an evidentiary hearing by separate order to consider any further violations of the APA and Sale Order by Lakeshore, whether Lakeshore is in contempt and, if so, the appropriate sanctions if any, as well as to consider EF's pending request for attorney fees in its *Motion to Determine Sufficiency of Answers and Objections to Requests for Admission and for Attorneys' Fees*. [Docs. 197, 207].

**END OF ORDER**

**Distribution List**

William A. DuPre, IV
Miller & Martin, PLLC
Suite 2100
1180 West Peachtree Street, N.W.
Atlanta, GA 30309

Michael P. Kohler
Miller & Martin PLLC
Suite 2100
1180 W. Peachtree St., N.W.
Atlanta, GA 30309-3407

Matthew W. Levin
Scroggins & Williamson P.C.
One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30327

J. Robert Williamson
Scroggins & Williamson, P.C.
One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30327

John F. Isbell
Thompson Hine LLP
Suite 1600 - Two Alliance Center
3560 Lenox Road
Atlanta, GA 30326

John K. Flock
500 N. Brand Blvd., Suite 2200
Glendale, CA 91203

Albert F. Nasuti
Thompson, O'Brien, Kappler & Nasuti, P.C.
Suite 400
2 Sun Court
Peachtree Corners, GA 30092